UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ANDREW RICCI, on behalf of himself          :
and others similarly situated,              :
               Plaintiff,          :
                                   :
           v.                 :          No. 5:22-cv-0650
                                   :
NEWREZ LLC,                                 :
               Defendant.          :

_____

**O P I N I O N**
**Plaintiff's Motion for Final Approval of the Class Action Settlement and Other Related Relief, ECF No. 51—Granted**

**Joseph F. Leeson, Jr.**                                      **October 17, 2023**
**United States District Judge**

## I.  INTRODUCTION

This is a hybrid class action/collective lawsuit asserting claims arising under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). The suit centers around whether the hourly employees of Newrez LLC were properly compensated for their overtime work. On June 21, 2023, the parties entered into a Class and Collective Action Settlement Agreement ("Agreement"). The matter is now before the Court on Plaintiff's Unopposed Motion for Final Approval of the Settlement and Other Associated Relief. *See* Mot., ECF No. 51.

## II.  BACKGROUND

On February 21, 2022, Andrew Ricci filed a hybrid class action/collective lawsuit arising under the FLSA and PMWA on behalf of himself and all similarly situated employees of Newrez LLC. *See* Compl., ECF. No. 1. The Complaint alleged that Newrez failed to properly compensate these employees for their overtime work. *Id.* ¶ 14. Both the FLSA and PMWA

require that non-exempt employees who work over 40 hours in a workweek receive overtime pay at 150% of their regular rate.  *See* 29 U.S.C. § 207(a)(1); 43 P.S. § 333.104(c).  In the course of their work, Ricci and others similarly situated were paid occasional commissions and bonuses. Compl. ¶ 10.  At the center of this litigation is the payment of an "OTI Elig. Bonus" which Ricci argues was a non-discretionary payment that Newrez failed to include in the calculation of its employees' overtime wage rate.  *Id.* ¶ 14.  Newrez denies any wrongdoing.  *See* Ans., ECF No. 8.

On June 20, 2023, the parties reached a settlement on these matters which was preliminarily approved by this Court on June 21, 2023.  *See* Mot., ECF. No. 47; Order, ECF No. 49.  In the Order granting preliminary approval, the Court ordered that the parties provide notice of the settlement to the class/collective members, appointed Winebrake & Santillo, LLC as interim class counsel, and scheduled a hearing for final approval of the settlement for October 2, 2023.  *See* Order, ECF No. 49.

On September 25, 2023, Ricci filed an Unopposed Motion for Final Approval of the Settlement and Other Associated Relief seeking: 1) final certification of the settlement class; 2) approval of the class action settlement agreement; 3) approval of a service award to Ricci; 4) appointment of Winebrake & Santillo as final class counsel; 5) approval of attorney's fees and expenses; 6) final certification of the FLSA collective; and 7) approval of the FLSA settlement agreement.  *See* Mot., ECF No. 51.  On October 2, 2023, the Court held a hearing on these matters.  For the reasons that follow, the Court grants the motion in its entirety.

III.     **LEGAL STANDARDS**

A.  **Class Action Settlement and Associated Matters**

1.  **Class Action Settlement – Review of Applicable Law**

Final approval of a class action settlement is a multi-step inquiry.  First, the Court must determine that the requirements for class certification are met.  *See In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).  Second, the Court must consider whether the settlement is fair, reasonable, and adequate having considered the relevant case law and statutory factors.  *Id.*  Finally, the Court will review the sufficiency of the class's notice of settlement.  *See Wood v. Saroj & Manju Invs. Phila. LLC,* No. CV 19-2820-KSM, 2021 WL 1945809 at *4-5 (E.D. Pa. May 14, 2021).

a.        **Class Certification of a Rule 23(b)(3) Class – Review of Applicable Law**

Class certification is Governed by Rule 23(a)'s four prerequisites and, in this case, Rule 23(b)(3)'s additional requirements of predominance and superiority.   Fed. R. Civ. P. 23. Numerosity is a consideration of the judicial economy and requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *In re Modafinil Antitrust Litig.,* 837 F.3d 238, 252-53 (3d Cir. 2016), as amended (Sept. 29, 2016) (noting "judicial economy" as a core purpose of the numerosity prerequisite).  Generally, joinder is presumed impracticable "when the potential number of class members exceeds forty."  *Allen v. Ollie's Bargain Outlet, Inc*., 37 F.4th 890, 896 (3d Cir. 2022).  The second prerequisite, commonality, requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy commonality, each class member's claim "must depend upon a common contention" such that the "determination of its truth or falsity will resolve an issue that is central

to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[T]he typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998).  The final prerequisite, adequacy of representation, requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Generally, this prerequisite considers "the competency of class counsel and conflicts of interest."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

A class action proceeding under Rule 23(b)(3) requires that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior*" to other adjudicatory methods.  Fed. R. Civ. P. 23(b)(3) (emphasis added).  "Predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2008) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001).  Rule 23(b)(3) outlines the factors pertinent to the superiority prerequisite as follows:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  "[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."  *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015).

**b.      Class Action Settlement Approval – Review of Applicable Law**

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995).  Since settlements of class actions affect the rights and claims of absent class members, the Courts take on a fiduciary role by reviewing the settlement for fairness.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

Rule 23(e) provides the procedure for class settlement.  After the settlement garners preliminary approval and the class is provided sufficient notice, the court will hold a hearing to determine whether the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  Rule 23 of the Federal Rules of Civil Procedure was amended in 2018 to enumerate the following considerations:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id*.  These factors were amalgamated from the various circuit court tests for fairness and are meant "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

Prior to Rule 23(e)(2)'s amendment, the Third Circuit evaluated the fairness of a settlement using the *Girsh* factors which consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks and ellipses omitted).[1]  Despite the amendment, the Third Circuit has continued to apply the *Girsh* factors. *See In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019).

---

[1]      In *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit suggested an expansion of the *Girsh* factors.  However, the aptly named *Prudential* factors "are just that, prudential."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).  Since the Court finds the *Girsh* factors sufficient, it declines to apply the *Prudential* factors.

### c.     Notice of Class Action Settlement – Review of Applicable Law

"Because Class Counsel seek[s] simultaneous certification of the proposed Class and approval of the proposed [s]ettlement, notice must satisfy both the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1)." *Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 382-83 (E.D. Pa. Apr. 22, 2015).  Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) shapes the content of that notice in that:

> The notice must clearly and concisely state in plain, easily understood language:
>
> > (i) the nature of the action;
> >
> > (ii) the definition of the class certified;
> >
> > (iii) the class claims, issues, or defenses;
> >
> > (iv) that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v) that the court will exclude from the class any member who requests exclusion;
> >
> > (vi) the time and manner for requesting exclusion; and
> >
> > (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  More simply, "the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

### 2.  Associated Class Action Matters

### a.     Class Counsel Appointment – Review of Applicable Law

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  In doing so, the Court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

*Id*. As relevant to the first factor, the Court will consider the extent to which proposed counsel has researched the underlying claims, interviewed litigants, or engaged experts. *See Durso v. Samsung Elecs. Am., Inc*., No. 2:12-CV-5352 DMC JAD, 2013 WL 4084640 at *3 (D.N.J. Aug. 7, 2013). The Court's consideration of the second and third factors are shaped by the general and specific experience of counsel in like matters, including their experience in the district where the complaint was filed. *See In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 366 (E.D. Pa. 2022). "Finally, when evaluating the fourth factor under Rule 23(g)(1)(A), the Court may look to the resources already expended in the case as well as the resources expended by the firm in other, similar class action cases." *Id*.

### b. Class Counsel Attorney's Fees – Review of Applicable Law

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "In the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in wage-and-hour cases brought under the FLSA or state wage and hour laws as a collective or class action." *Wood*, 2021 WL 1945809, at *11. In assessing the reasonableness of attorney's fees under the percentage-of-recovery method, the Court considers the following factors, otherwise known as the *Gunter* factors:

(1) the size of the fund created and the number of persons benefitted;
(2) the presence or absence of substantial objections by members of

the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005), as amended (Feb. 25, 2005) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

### c.    Class Representative Service Award – Review of Applicable Law

Service payments are meant to "'compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation,' and to 'reward the public service of contributing to the enforcement of mandatory laws.'"  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 (3d Cir. 2011) (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09–905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011)).  Where the proposed service payment is allocated from the common fund, the Court will determine whether the proposed payment is proper considering:

> [1] the risk to the plaintiff in commencing litigation, both financially and otherwise; [2] the notoriety and/or personal difficulties encountered by the representative plaintiff; [3] the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; [4] the duration of the litigation; [5] and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class.

*McGee v. Ann's Choice, Inc.*, No. CIV.A. 12-2664, 2014 WL 2514582 at *3 (E.D. Pa. June 4, 2014).

## B.  FLSA COLLECTIVE CERTIFICATION AND SETTLEMENT

### 1.    FLSA Collective and Final Certification – Review of Applicable Law

District courts in the Third Circuit have identified two procedures for settling FLSA claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or

overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) the district court can approve a settlement under 29 U.S.C. § 216(b). *See Bredbenner*, 2011 WL 1344745, at *18 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Bettger v. Crossmark, Inc.*, No. 13–2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08–1798, 10–2461 and 09–6128, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012).

Final certification of an FLSA collective action precedes court approval of the ultimate settlement.  "[T]he standard to be applied on final certification is whether the proposed collective plaintiffs are 'similarly situated.'"  *Zavala v. Wal-Mart Stores Inc*., 691 F.3d 527, 536 (3d Cir. 2012).  In making that determination, "the court must consider various factors, such as 'whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment.'"  *Sawyer v. Health Care Sols. at Home, Inc*., 2019 U.S. Dist. LEXIS 61499, at *6 (E.D. Pa. Apr. 9, 2019) (quoting *Keller v. TD Bank, N.A*., Civ. No. 12-5054, 2014 WL 5591033, at *8 (E.D. Pa. Nov. 4, 2014)); *see also Zavala*, 691 F.3d at 538 (reasoning that 'similarly situated' "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA") "Plaintiffs bear the burden of proving that they are similarly situated."  *Sawyer*, 2019 U.S. Dist. LEXIS 61499, at *6.

### 2.   FLSA Settlement Approval – Review of Applicable Law

As to settlement approval, District Courts in the Third Circuit have held that the court must determine whether "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'"  *Brumley*, 2012 WL 1019337, at *2 (quoting *Lynn's Food*,

679 F.2d at 1354); *see also In re Chickie's & Pete's Wage & Hour Litig.*, No. 12–6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014); *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); *Bredbenner*, 2011 WL 1344745, at *18.

A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Chickie's*, 2014 WL 911718, at *2 (quoting *Lynn's Food*, 679 F.2d at 1354). In evaluating whether a settlement is "fair and reasonable" under the FLSA, courts in the Third Circuit have considered the nine factors outlined by the Third Circuit Court of Appeals in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). *Waltz v. Aveda Transportation & Energy Servs. Inc.*, No. 4:16-CV-00469, 2017 WL 2907217, at *3 (M.D. Pa. July 7, 2017); *Brumley*, 2012 WL 1019337, at *4 (noting courts' use of *Girsh* factors in FLSA context in the absence of clear Third Circuit standards). Lastly, the Court must consider whether the settlement furthers or frustrates the implementation of the FLSA in the workplace. *Tompkins v. Farmers Ins. Exch.*, No. 5:14-CV-3737, 2017 WL 4284114, at *8 (E.D. Pa. Sept. 27, 2017).

## IV.   ANALYSIS

### A.  Class Action Settlement and Associated Matters

#### 1.  Class Action Settlement

##### a.  Class Action Certification of Rule 23(b)(3) Class

The class action encompasses the claims brought under the PMWA. The proposed class consists of the 276 individuals who are listed in Exhibit A of the Agreement and have not excluded themselves from settlement. These individuals worked for Newrez in Pennsylvania

during the relevant period, were paid on an hourly basis, and received a payment from Newrez titled "OTI Elig. Bonus."

Upon consideration of Rule 23's prerequisites, the Court finds certification of this class appropriate.  Foremost, the Court finds that numerosity is plainly met where the proposed class consists of 276 individuals, far surpassing the informal forty plaintiff threshold.  *See Mielo v. Steak 'n Shake Operations, Inc*., 897 F.3d 467, 486 (3d Cir. 2018).  The commonality prerequisite is also met.  Here, the class is bound together by a common issue in whether Newrez's uniform calculation of its employees' overtime wage rate complied with the PMWA. *See Bredbenner*, 2011 WL1344745 at *6 (holding that an employer's allegedly flawed uniform overtime formula is sufficient to meet the commonality prerequisite)  Next, the Court finds that Ricci's claims are sufficiently typical of the class.  During the relevant time period, Ricci was an hourly wage worker employed by Newrez and covered by the PMWA.  He was paid a combination of hourly wages, occasional commissions, and non-discretionary bonuses typical of other class members.  Thus, his interests are aligned with the class such that in advancing his claims, he will advance the interests of the class.  *See Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 121 (E.D. Pa. Jan. 31, 2018) (finding typicality met in an action arising under the PMWA).

The Court also finds that the settlement class satisfies Rule 23(b)(3)'s additional predominance and superiority prerequisites.  As noted above, the common issue in this case is whether Newrez's uniform calculation of its employees' overtime wage rate complied with the PMWA.  The individual issues would be the differences in class member wage rate and how many overtime hours each class member actually worked.  These issues do not predominate over common issues because the Court can easily adjust the damages for each class member by using

a pro-rata calculation. *Bredbenner*, 2011 WL 1344745, at *9 ("Factual differences between class members, such as their base salary and their amount of unpaid overtime, are incidental matters that only impact damages.") Exhibits A and B of the settlement agreement demonstrate the feasibility of this method.

Further, the class action method of litigating this matter is superior to any alternatives. One of the purposes of class actions suits is to permit the aggregation of claims that would otherwise have gone unlitigated. *See Krimes v. JPMorgan Chase Bank*, N.A., No. CV 15-5087, 2016 WL 6276440, at *5 (E.D. Pa. Oct. 26, 2016) ("Since the individual claims are relatively small, without the class, individuals might lack incentive to pursue their claims.") Here, where the individual claims are fairly modest, individual class members are disincentivized from bringing their own claims by the expense and burdens of litigation. However, the class action suit has aggregated these claims into an economically viable action. With regard to factor C, this particular forum is appropriate as it is where all class members reside or worked. Finally, this Agreement would suggest that managing the class action is not so difficult as to be unsuitable.

### b. Approval of Class Action Settlement

#### i. Rule 23(e)(2) Factors

Turning its attention to the Rule 23(e)(2) factors, the Court applies a presumption of fairness. *In re NFL Players Concussion Injury Litig*., 821 F.3d 410, 436 (3d Cir. 2016) (quoting *In re Cendant Corp. Litig*., 264 F.3d 201, 232 n.18 (3d Cir. 2001) ("We apply an initial presumption of fairness in reviewing a class settlement when: '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'") Here, the Court finds that the settlement was negotiated at arm's length where it was overseen and

facilitated by Magistrate Judge Pamela Carlos.  The Court is also satisfied with the experience

and efforts of Class Counsel.  As detailed in the Declaration of Mark J. Gottesfeld, Winebrake &

Santillo have committed over 232 attorney hours to the matter.  Further, prior to this settlement,

Counsel has engaged in significant discovery, retained experts to analyze payroll data, prepared

damage models and conducted numerous interviews with FLSA opt-ins as well as Newrez

human resource staff.  The record also demonstrates Winebrake & Santillo's considerable

experience in litigating similar matters.  Finally, the Court notes that there were no objections to

the settlement.  Thus, the settlement is presumptively fair.

Regarding Rule 23(e)(2)'s other factors, the Court is satisfied with the adequacy of the

relief.  Plaintiff's expert, Dr. Fox, figured the total unpaid overtime wages to be $285,373.00.

The $239,818 settlement represents roughly 84% of that total figure.  The Court finds this

amount adequate when balanced with the "cost and risk involved in pursuing a litigated

outcome." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.  Moreover, the

Court is satisfied with the method of distribution where the class is not required to file onerous

claims forms or otherwise take affirmative actions to receive payment.  *See Hall v. Accolade,*

*Inc.*, No. 17-CV-3424, 2019 U.S. Dist. LEXIS 143542 at *12 (E.D. Pa. Aug. 22, 2019).  Finally,

the settlement treats class members equitably relative to each other where it is apportioned on a

pro rata basis. [2]

        ii.   *Girsh* Factors

In finding the class settlement fair, reasonable, and adequate, the Court analyzes each the

*Girsh* factors as follows:

---

[2]      For the reasons noted in Section (IV)(A)(2)(b), *infra*, the Court is also satisfied with the terms of the proposed award of attorney's fees.

*Complexity, Expense, and Likely Duration of Litigation*

"The first *Girsh* factor 'captures the probable costs, in both time and money, of continued litigation.'" *Sullivan,* 667 F.3d at 320 (quoting *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535-36 (3d Cir. 2004)). This factor weighs in favor of settlement. This litigation has been ongoing for over a year and half and, barring settlement, is likely to extend significantly further. Bringing this matter to trial would cost a substantial amount of money and time to prepare expert testimony, pretrial motions, and other general trial preparation.

*The Reaction of the Class to the Settlement*

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan*, 667 F.3d at 321 (quoting *Prudential*, 148 F.3d at 318). This factor weighs in favor of settlement as there have been no objections from class members or FLSA opt-ins.

*The Stage of the Proceedings and the Amount of Discovery Completed*

"The third *Girsh* factor 'captures the degree of case development that class counsel had accomplished prior to settlement,' and allows the court to 'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Id*. (quoting *Warfarin*, 391 F.3d at 537). This factor weighs in favor of settlement as the parties have engaged in significant discovery. Newrez has produced its payroll information and both parties have hired experts to analyze relevant data. The parties have also exchanged their respective damage assessments. In the course of preparing their case, Class Counsel has also interviewed roughly two-dozen FLSA opt-ins.

*The Risks of Establishing Liability and Damages*

"The fourth *Girsh* factor 'examine[s] what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them.'" *Id*. at 322 (quoting *In re Cendant Corp. Litig*., 264 F.3d at 237.  The fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 816 (3d Cir. 1995).

All litigation has inherent risks. *See Lazy Oil Co. v. Wotco Corp*., 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997).  This is especially so where, as is the case here, the parties are represented by skilled counsel.  As noted, this litigation centers around whether the "OTI Elig. Bonus" should have been included in Newrez's calculation of the overtime payrate.  For their part, Newrez puts forward substantive challenges and numerous affirmative defenses to Ricci's claims such that taking this matter to trial presents substantial downside risk to the class.  Here, the Court finds that the settlement adequately accounts for these risks in recovering 84% of the total value of Ricci's claim.

*The Risks of Maintaining the Class Action Through Trial*

"The sixth *Girsh* factor 'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial' in light of the fact that 'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action.'" *Sullivan*, 667 F.3d at 322 (quoting *Warfarin*, 391 F.3d at 537).  This factor is neutral.  While "Rule 23 permits a district court to decertify or modify a class if it proves to be unmanageable at any time during the litigation," *Kelly v. Business Info. Grp., Inc*., 2019 U.S. Dist. LEXIS 16288, *37 (E.D. PA. Jan. 31, 2019), nothing in the record would suggest that the

class is at risk of falling apart as no individuals have objected to the settlement and only one

class member has opted for exclusion.

<em>Ability of Defendant to Withstand a Greater Judgment</em>

"The seventh *Girsh* factor considers 'whether the defendants could withstand a judgment

for an amount significantly greater than the settlement.'"  *Sullivan*, 667 F.3d at 323 (quoting

*Warfarin*, 391 F.3d at 537-38).  This factor "is most relevant when the defendant's professed

inability to pay is used to justify the amount of the settlement."  *In re Nat'l Football League*

*Players Concussion Inj. Litig.*, 821 F.3d at 440.  However, the Court finds this factor

inapplicable where Newrez's ability to pay never came into question.

<em>The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery<br>and All Attendant Risks of Litigation</em>

"The final two *Girsh* factors consider 'whether the settlement represents a good value for

a weak case or a poor value for a strong case.'"  *Sullivan*, 667 F.3d at 323 (quoting *Warfarin*,

391 F.3d at 538).  This is assessed by weighing "the present value of the damages plaintiffs

would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with

the amount of the proposed settlement."  *In Re General Motors*, 55 F.3d at 806 (quoting Manual

for Complex Litigation 2d § 30.44, at 252).  This factor largely overlaps with the Court's

analysis of the adequacy of relief addressed in Section (IV)(A)(1)(b)(i), *supra*.  Under the

accounting of Ricci's expert, the sum of the class members' unpaid wages is $285,373.  Thus, a

recovery of $239,818 represents a significant portion of the possible recovery when properly

discounted for the inherent risk of litigation.

### c.  Notice of Class Action Settlement

In granting preliminary approval of the Agreement, the Court approved of the

Agreement's notice protocols.  The Court finds no reason to change that approval now.  The

17<br>101623

record shows that on July 5, 2023, notice was mailed to all class members.  *See* Dec. Patton ¶ 5, ECF. No. 51.  From the original mailing, thirty-two notices were returned.  *Id*. ¶ 6.  Of those thirty-two returns, possible new addresses were obtained for twenty-eight individuals to whom new notices were remailed.  *Id.*  As of September 21, 2023, a total of just four of those remailed notices were returned.  *Id.*  The Court is also satisfied with the content of the notice as it properly apprised its recipients of the nature and scope of the class action, the terms of its settlement, the right and manner by which to exclude themselves from the agreement, and the effect of a binding judgment on the recipient's rights.  *Id.* Ex. A.

### 2.   Associated Class Action Matters

#### a.      Appointment of Counsel

Having considered the requisite factors, the Court appoints Winebrake & Santillo as final class counsel.  Winebrake & Santillo has committed over 232 attorney hours to identifying and investigating the potential claims in this action.  It has represented the class/collective throughout the duration of the litigation and was appointed interim counsel in the Order of this Court dated June 21, 2023.  Finally, Winebrake & Santillo has a considerable record in employment matters. *See* Dec. Gottsfeld, ECF. No. 51

#### b.      Approval of Attorney's Fees

Having considered the *Gunter* factors, the Court finds approval of the attorney's fees appropriate.  The settlement will result in attorney's fees of $135,028.30 which represents roughly 30.7% of the total $439,818.51 settlement fund.  The Court finds that this award is roughly comparable to similar cases.  *See, e.g., Bristow v. Caritas*, No. 22-CV-235, 2023 U.S. Dist. LEXIS 92193 at *2-3 (E.D. Pa. May 25, 2023) (approving a fee constituting 33.33% of an FLSA settlement); *Goncalves v. AJC Construction Inc*., No. 21-CV-4631, 2022 WL 2985636,

2022 U.S. Dist. LEXIS 133995, at *9-10 (E.D. Pa. July 28, 2022) (fee of "slightly less than 36 percent of the total recovery . . . is a reasonable amount in FLSA cases"); *Gravely v. PetroChoice LLC*., No. 19-CV-5409, 2022 U.S. Dist. LEXIS 113746, at *5 (E.D. Pa. June 28, 2022) (35% fee "in line with fee awards by courts in the Third Circuit"); *Howard v. Phila. Hous. Auth*., 197 F. Supp. 3d 773, 783 (E.D. Pa. July 18, 2016) ("[F]ee awards for common fund cases generally range from 20-45% of the fund.")

Much of the other *Gunter* factors overlap with the various factor tests outlined above as the Court's fundamental role in this stage of the proceedings is ensuring fairness in all facets of the litigation.  To reiterate, the size of the fund and the number of persons benefited counsels in favor of approving the attorney's fees.  The class action settlement represents roughly 84% of the total alleged unpaid wages as calculated by Dr. Fox, Ricci's expert.  The lack of objections also counsel in favor of settlement.  With regard to *Gunter* factors three and six concerning Class Counsel's skill, efficiency, and efforts, the Courts notes its analysis of Rule 23(e)(2) and *Girsh* factor three, *supra*.

### c.    Approval of Plaintiff Service Award

The Court finds the service payment appropriate.  Ricci has been involved with this litigation since its inception over a year and a half ago.  At the fairness hearing, counsel argued, and the Court agrees, that bringing a suit such as this involves a degree of risk for a plaintiff.  Court records are more often public and future employers may be concerned with hiring an individual who has brought litigation against previous employers.  Further, the record demonstrates that Ricci had a considerable role in the litigation where he attended the settlement conferences.

The award amount is also consistent with other wage and hour class actions in the Third Circuit. *See e.g. Hall*, 2020 U.S. Dist. LEXIS 52632, at *25-26 (awarding $10,000); *Layer v. Trinity Health Corp.*, No. 18-CV-2358, 2019 U.S. Dist. LEXIS 185211, at *3 (E.D. Pa. Oct. 24, 2019) (awarding $10,000); *Myers v. Jani-King of Phila. Inc.*, No. 9-CV-1738, 2019 U.S. Dist. LEXIS 144929, at *25-26 (E.D. Pa. Aug. 26, 2019) (awarding $10,000).  Accordingly, the $10,000 service payment to Ricci is approved.

### B.  FLSA Settlement

#### 1.  Final Certification of FLSA Collective

The FLSA collective consists of the 140 individuals identified in Exhibit B of the Agreement who opted into the FLSA collective action pursuant to 29 U.S.C. § 216(b).  The record establishes that the FLSA collective is similarly situated.  This collective is the result of an opt-in procedure whereby Plaintiff's counsel mailed all non-exempt individuals employed by Newrez within the relevant timeframe and who were paid a combination of hourly wage and an "OTI Elig Bonus."  *See* ECF No. 16.  That mailing instructed recipients to complete the consent form to opt-in to the action.

Thus, each member of the collective is similarly situated where they worked for Newrez as a non-exempt, hourly paid employee and, more critically, were paid the "OTI Elig Bonus" which lies at the center of the dispute over Newrez's overtime pay calculation.  This is a common legal claim for which the collective "seek[s] substantially the same form of relief," rendering the collective similarly situated for the purposes of final FLSA certification.  *Zavala*, 691 F.3d at 537.  Accordingly, the Court finds final certification of the FLSA collective appropriate.

2.   **FLSA Settlement**

The court also finds the FLSA settlement appropriate.  The court finds that there exists a bona fide dispute in this matter.  "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented."  *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. Jan. 11, 2016).  Here, the dispute generally turns on whether the bonuses paid were supposed to be included in the calculation of the Plaintiff employee's overtime wage rate.  Newrez has offered substantive defenses to the merits of Plaintiff's claim, the resolution of which will entail interpreting the FLSA.  Thus, there exists a bona fide FLSA dispute.

For much of the same reasoning applied to the approval of the class action settlement, the Court also finds that the settlement is fair and reasonable.  *See Brumley*, 2012 U.S. Dist. LEXIS 40599, at *13-14 ("While factors for evaluating 'fairness' of a settlement in an FLSA collective action have not been definitively set out by the Third Circuit, district courts in this Circuit have utilized the *Girsh* factors.")

Finally, the Court finds that the settlement furthers the FLSA's implementation.  Ordinary stumbling blocks on this factor are overly broad waiver or release provisions, *see Bettger*, 2015 U.S. Dist. LEXIS 7213 at *22-23, unnecessarily restrictive confidentiality provisions, *see Mabry v. Hildebrandt*, 2015 U.S. Dist. LEXIS 112137at *6 (E.D. Pa. Aug. 24, 2015), or efforts to keep the settlement sealed, *see Mabry v. Hildebrandt*, 2015 U.S. Dist. LEXIS 112137 at *6-7 (E.D. Pa. Jul. 15, 2015).  None of these considerations are involved in the instant settlement.

## V.      CONCLUSION

For the reasons stated herein, Ricci's Unopposed Motion for Final Approval of the

Settlement and Other Associated Relief is granted in its entirety.  A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge